IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Cassie C. Crisano,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:19cv1612 (CMH/TCB)** |
| | ) | |
| **Phil Grimes, et al.,** | ) | |
| **Defendants.** | ) | |

MEMORADUM OPIONION

Cassie C. Crisano, a Virginia inmate proceeding pro se, filed a civil rights complaint

pursuant to 42 U.S.C. § 1983 in the Circuit Court of Stafford County, Virginia (Civil Case

No.19-2219) on July 19, 2019. [Dkt. No. 1-2 at 3]. In her complaint she names the following

defendants: Rappahannock Regional Jail (RRJ), Phil J. Grimes, Captain Norris, Sgt. Branson,

Cpl. Jacobs, and Thomas Foley. Plaintiff alleges defendants violated her right of access to the

courts by restricting her use of the phone to communicate with her attorney, violated her attorney

client privacy, denied her DC-311 forms (district court criminal complaint forms), restricted her

mail and facility access, searched her legal documents and mail outside of her presence, limited

her access to the law library, and improperly placed her in segregation.

Defendant Grimes, by counsel, filed a removal notice in the circuit court [Dkt. No. 1-3],

and Defendants Grimes and Foley have moved this Court to Dismiss the complaint. [Dkt. Nos. 4

and 11]. Plaintiff was advised of her rights under Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975), and has responded, seeking leave to amend her complaint. [Dkt. Nos. 9, 13-17].

Defendants Grimes and Foley have each objected to plaintiff's motion to amend. [Dkt. Nos. 19

and 20]. In her piecemeal motion for leave to amend, plaintiff seeks to add numerous defendants

and has failed to provide a coherent single document to advise defendants and the Court of what

claims she alleges, the specific acts she alleges that make a defendant liable to her, when acts

were done or not done, and the specific harm plaintiff alleges befell her as a result of a

defendants actions or inaction.  Consequently, her motion to amend will be denied.

### I.  Standard of Review

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

12(b)(6) tests the legal sufficiency of a complaint.  See, e.g., Edwards v. City of Goldsboro, 178

F.3d 231, 243 (4th Cir. 1999).  Generalized, unsupported assertions are insufficient to state a

claim.  While the well-pleaded allegations of a complaint are presumed to be true for purposes of

a motion to dismiss, legal conclusions unsupported by allegations of specific facts are

insufficient to withstand a motion to dismiss under Rule 12(b)(6).  Randall v. United States, 30

F.3d 518, 522 (4th Cir. 1994).  Legal conclusions in the guise of factual allegations are similarly

insufficient.  See, e.g., District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,

609 F.2d 1083, 1085-86 (4th Cir. 1979).

A court should dismiss a complaint if the plaintiff fails to proffer "enough facts to state a

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007). A plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." Id. at 555. A claim will lack "facial plausibility" unless the plaintiff "plead[s]

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

Determining "whether a complaint states a plausible claim for relief," is a "context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." Id. at 679 (citations omitted). A complaint fails to state a claim if the well-pleaded facts

"do not permit the court to infer more than the mere possibility of misconduct." Id. Even under a notice pleading regime, a complaint must contain sufficient evidentiary facts to raise a plausible – as opposed to just conceivable – inference that the plaintiff is entitled to relief. Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680. Under Twombly, a plaintiff must allege enough facts "to raise a right to relief above the speculative level[.]" Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555, 570).

In addition, a court may dismiss claims based upon dispositive issues of law. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In considering a motion to dismiss, the court presumes that all factual allegations in the complaint are true and accords all reasonable inferences to the non-moving party. 2A Moore's Federal Practice P 12.07[2.5] (2d ed. 1994). See also Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). The Court is mindful of its duty to construe liberally the complaints of pro se litigants. See Bracey v. Buchanan, 55 F.Supp.2d 416, 421 (E.D. Va. 1999). However, such duty does not require district courts "to conjure up questions never squarely presented to them [as] [d]istrict judges are not mind readers." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Even pro se plaintiffs are required to allege facts that state a cause of action. Id. However, a pro se complaint must not be dismissed under Rule 12(b)(6) for failing to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam) (internal quotation omitted).

## II. The Complaint

Plaintiff, Cassie C. Crisano, ("Plaintiff" or "Crisano") is an inmate at Rappahannock Regional Jail (RRJ).[1] Defendant Grimes is the Superintendent of RRJ, and Thomas Foley is the Stafford County Administrator.  The complaint states that on or about November 26, 2018, she was placed on phone restrictions and administrative segregation for "Security Reasons." [Dkt. No. 1-2 at 3].[2]  Specifically, plaintiff was placed in administrative segregation because she tried "to hire someone to" commit a murder while she was detained at RRJ.  [Dkt. No. 1-2 at 13].

Regarding her communications with counsel, plaintiff alleges that RRJ officers stood near her during conversations with her attorney, standing "either directly in front of the phone or on the side of it while Plaintiff talked to her attorneys."  [Id. at 4].  The Complaint further claims that plaintiff had to "talk over telephone lines which [Plaintiff] reasonably believe[d]" were being monitored.  Id.  Plaintiff claims that the alleged phone monitoring impinged upon her attorney-client confidentiality and effective assistance of counsel, and that other inmates were not subject to such conditions.  [Id. at 5].  Plaintiff asserts that the phone restrictions were

---

[1]  Plaintiff has twenty-one indictments pending in Stafford Circuit Court.  See http://www.courts.state.va.us/caseinfo/home.html#cc (click on drop down menu for Stafford Circuit Court) (last viewed Apr. 13, 2020).  The charges stem from indictments filed on January 10, 2018 and February 5, 2018.  Id.  (Commonwealth v. Crisano, Case Nos. CR18-180-00 through -20).  She also has a third set of indictments upon which she has been tried and convicted, with three not guilty verdicts (August 6, 2019) (Commonwealth v. Crisano, Case Nos. CR291-06 through -08); two nolle prosequi (August 6, 2019) (Commonwealth v. Crisano, Case Nos. CR291-04, 10); and six convictions (August 9, 2019 and final orders December 13, 2019; offense dates October 1, 2018) (Commonwealth v. Crisano, Case Nos. CR291-00 through -03, -05, -09).  The six convictions are on appeal.  Crisano v. Commonwealth, Record No. 2039-19-4 (Ct. App. Va.).  It is well-settled that federal courts may take judicial notice of proceedings in other courts of record.  Lyons v. Stovall, 188 F.3d 327, 333 (6th Cir. 1999); Tinker v. Sears, Roebuck & Co., 127 F.3d 519, 524 (6th Cir. 1997).  "[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."  Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989).

[2]  The offense dates for her subsequent charges and convictions of solicitation to commit capital murder/murder for hire were October 1, 2018.  See, supra at note 1.

implemented with defendant Grimes' "knowledge, permission, consent, and participation." [Id. at 6]. Plaintiff also asserts that between May 1, 2019 and June 1, 2019, she made requests to receive "criminal complaint forms" as well as "assistance in allowing her access to Stafford County Circuit Court and U.S. Supreme Court" where she had pending cases.

Regarding being placed in administrative segregation, plaintiff complains that she is on "no phone and no mail status and 2-man full restraint to Court," and about being on administrative segregation status "for over 210 days." Captain Norris responded to the complaints by reminding plaintiff that she had been placed in administrative segregation due to her attempted murder-for-hire plot while incarcerated at RRJ. [Id. at 13]. Plaintiff also alleges defendant Grimes did not address her complaints about being in administrative segregation. [Id. at 14].

Plaintiff also alleges Sgt. Branson and Cpl. Jacobs entered her cell on July 10, 2019 and conducted a cell inspection. [Id. at 16-17]. Plaintiff claims that Sgt. Branson and Cpl. Jacobs spilled water on her "Federal Legal Docs" and after the search, half of her "Legal Documents" were missing. [Id. at 16]. The Complaint asserts that the search was done out of retaliation and resulted in plaintiff not having her "paperwork for her trial set for August 6, 2019." [Id.].

The Complaint asserts that the phone monitoring violated plaintiff's First, Sixth, Eighth, and Fourteenth Amendment due process and equal protection rights. [Id. at 4-5]. Plaintiff seeks injunctive relief for the phone restrictions to cease, as well as compensatory and punitive damages, and attorneys' fees. [Id. at 5-9].

Regarding defendant Foley, Crisano complains that he did not respond to her complaints about being denied forms to allow her access to Stafford Circuit Court, interreference with her access to the courts/attorney communications, the search of her cell and loss of legal documents,

being placed in segregation, and the other restrictions that accompanied segregation. [Id. at 15-16].

### III. Analysis

Defendant Grimes seeks to have the complaint dismissed because plaintiff has failed to allege facts that support a finding that he had any involvement in the phone monitoring, the search of her cell, the denial of the criminal complaint forms or her placement in administrative segregation; that plaintiff has failed to set forth a denial of access to the courts/interference with counsel claim; her placement in administrative segregation and the accompanying restrictions were justified by security concerns; plaintiff has not stated an equal protection claim; she has no constitutional right to file grievances; and she has not established a claim of retaliation.

In a separate motion to dismiss, defendant Foley, the Stafford County Administrator, seeks dismissal because he does not work for or control RRJ and RRJ is not owned or operated by Stafford County, because plaintiff's claims are inadequately supported by factual allegations, and because he is entitled to qualified immunity.

*A. Defendant Grimes*

Plaintiff's claims rely upon the assumption of unconstitutional actions on the part of RRJ. Since defendant Grimes is the Superintendent of RRJ, for purposes of the motion to dismiss, the Court will use RRJ and defendant Grimes interchangeably.  Plaintiff, however, cannot maintain a claim against defendant Grimes under § 1983 unless she alleges

> (1) that the supervisor had actual or constructive knowledge that his subordinate[s were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).  There can

be no supervisory liability, however, when there is no underlying violation of the Constitution.

See Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991).  "Because

vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violated the Constitution."

Iqbal, 556 U.S. at 676.

Regarding the first step, plaintiff has not established that there is any "pervasive and

unreasonable" risk of constitutional injury.  Plaintiff's restrictions were of her own making

because she attempted to arrange for a murder for hire while she was incarcerated at RRJ.[3]  RRJ

took the necessary steps in furtherance of an "important penological interest[]" to deter her "from

using the telephone in furtherance of criminal activity inside and outside the jail .…  [D]etecting,

preventing, and prosecuting such activity when it does occur" constitutes an important

penological interest.  United States v. Lentz, 419 F. Supp. 2d 820, 835 (E.D. Va. 2005).  When a

jail regulation impinges on an inmate's constitutional rights, the regulation is valid if it is

reasonably related to legitimate penological interests.  See Turner v. Safley, 482 U.S. 78, 89

(1987).  A jail "does not need actually to demonstrate that its regulations" succeed in achieving

the penological goals at which they are aimed; the regulations must instead merely have a

rational relationship to the stated goals.  United States v. Stotts, 925 F.2d 83, 87 (4th Cir. 1991).

Several factors are relevant in determining the reasonableness of the regulation:

> (1) whether there is a "valid, rational connection" between the prison regulation
> or action and the interest asserted by the government, or whether this interest is
> "so remote as to render the policy arbitrary or irrational"; (2) whether 'alternative

---

[3]  Plaintiff was convicted of three counts of solicitation to commit capital murder/murder for hire on August 9, 2019.  Commonwealth v. Crisano, Case Nos. CR291-02, -03, and-09. http://www.courts.state.va.us/caseinfo/home.html#cc (click on drop down menu for Stafford Circuit Court) (last viewed Apr. 13, 2020).

means of exercising the right . . . remain open to prison inmates" . . . ; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

Turner, 482 U.S. at 89-92.

"'Running a prison is an inordinately difficult undertaking,' and the task is 'peculiarly within the province of the legislative and executive branches of government.' As a consequence, courts must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006). In evaluating the restrictions under Turner, there is a rational connection between plaintiff's conduct (attempting to hire a murderer while incarcerated in RRJ) and the restrictions RRJ placed upon plaintiff's use of the phone and her access to the mail. RRJ provided phone access for plaintiff to contact her attorney and, as detailed below see infra at 9-11, plaintiff not only had available alternatives for attorney client confidentiality, but she alleged no specific injury regarding her access to the courts or the restrictions on her mail. The impact on plaintiff was minimal. Further, plaintiff has alleged no actual injury in any of her litigation. To ensure plaintiff would not continue to commit criminal acts such as soliciting a murder while incarcerated, RRJ took reasonable steps to monitor her communications by restricting her communications to detect, prevent, and prosecute any further criminal behavior on her part.

Regardless of her conduct, the complaint fails because it alleges no prejudice from the alleged restrictions placed upon plaintiff with either her access to the courts or her attorney-client relationship. "[I]t is well settled that some showing of prejudice is a necessary element of a Sixth Amendment claim based on an invasion of the attorney client relationship." United States v. Chavez, 902 F.2d 259, 266 (4th Cir. 1990); see also Lentz, 419 F. Supp. 2d at 835-36 (concluding jail's policy of recording all telephone conversations did not violate criminal

defendant's Sixth Amendment right to counsel; defendant had other avenues to communicate

confidentially with counsel and government is not required to provide defendant with the most

convenient means of communication).  Plaintiff has not alleged any specific prejudice resulting

from having a correctional officer present while she had telephone conversations with her

counsel.  Plaintiff also had no right to telephone her attorney.  Aswegan v. Henry, 981 F.2d 313,

314 (8th Cir. 1992) (inmate's constitutional right of meaningful access to the courts does require

"any particular means of access, including unlimited telephone use"); see Benzel v. Grammer,

869 F.2d 1105, 1108 (8th Cir. 1989) (prisoners have no right to unlimited telephone use).

There is also no specific allegation that plaintiff's counsel was in any way hampered in

his communication with plaintiff, or his investigation and presentation of plaintiff's defense.  See

United States v. Jenkins, 178 F.3d 1287, [published in full-text format at 1999 U.S. App. LEXIS

8703] 1999 WL 285910, at *3 (4th Cir. 1999) (unpublished) (holding not proper for a court to

"presume that prejudice occurred" in the context of a Sixth Amendment violation) (citing

Weatherford v. Bursey, 429 U.S. 545, 556 (1977)); see also Saunders v. Dickerson, No.

1:07cv1094, 2008 WL 2543428, at *3-4 (E.D. Va. 2008) (court held pretrial detainee whose

telephone privileges were completely suspended while in administrative segregation and was

unable to call his attorney suffered no prejudice and failed to state a viable Sixth Amendment

claim because he could have written or had in-person visits with his attorney), aff'd, 313 Fed.

App'x. 665 (4th Cir. 2009).

Plaintiff's First Amendment denial of access to the courts claim suffers from the same

issue, namely that she has not shown an "actual injury." O'Dell v. Netherland, 112 F.3d 773,

776 (4th Cir. 1997) ("Ultimately, a prisoner wishing to establish an unconstitutional burden on

his right of access to the courts must show 'actual injury' to 'the capability of bringing

contemplated challenges to sentences or conditions of confinement before the courts.'") (citing

Lewis v. Casey, 518 U.S. 343, 356 (1996).  Plaintiff does not identify any missed deadlines or

other actual injury to support a First Amendment claim.  To state a claim for violation of her

right of access to the courts, an inmate must demonstrate that her position as a litigant was

actually prejudiced.  See Lewis, 518 U.S. at 356.  Plaintiff must "demonstrate that the alleged

shortcomings . . . hindered [her] efforts to pursue a legal claim." Id. at 351.

The right of access does not require RRJ to ensure that plaintiff be allowed to "turn[ ]

pages in the law library" or have access to every type of legal material she believes she needs to

litigate effectively, once he has brought his claim before the court.  Id. at 356.  To state an access

claim, plaintiff must show that she was unable to bring, or she lost, a viable claim concerning

prison conditions or the fact of her confinement, because specified deficiencies in the law library

or legal assistance program the prison provided denied her the "capability" of litigating that

claim.  Id. at 356-57.  Further, so long as restrictions on the right of access to the courts "are the

product of prison regulations reasonably related to legitimate penological interests, such delays

are not of constitutional significance, even where they result in actual injury." Id. at 362.  As the

Supreme Court has held, the right to access the court

> does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims.  The tools it requires to be provided are those that the
> inmates need in order to attack their sentences, directly or collaterally, and in
> order to challenge the conditions of their confinement.  Impairment of any other
> litigating capacity is simply one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

Id. at 355 (emphasis omitted; see also Harrison v. Moketa/Motycka, 485 F. Supp. 2d 652, 658

(D.S.C. 2007) ("[I]t is well established that inmates do not have unlimited rights to photocopies

or photocopying machines.").

Plaintiff's reference to being denied criminal complaint forms is of no merit. The above discussion of the constitutional right of access to the courts for inmates does not encompass providing inmates with blank criminal complaint forms. "A private citizen 'lacks a judicially cognizable interest in the prosecution or non-prosecution of another.' Linda R. v. Richard V., 410 U.S. 614, 619 (1973); see also Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) ("In our system . . . the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.").

> Inmates have a guaranteed right to reasonable access to both state and federal courts. Ex parte Hull, 312 U.S. 546 (1941); Procunier v. Martinez, 416 U.S. 396, (1974). However, that right involves only an entitlement to seek to "enforce personal rights in civil litigation." Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990). "No citizen has an enforceable right to institute a criminal prosecution." Lopez, 914 F.2d at 494 (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973)).

Breckenridge v. Thompson, Civil Action No. 7:08-cv-00243, 2008 U.S. Dist. LEXIS 26734, *3, 2008 WL 899225 (W.D. Va., Apr. 1, 2008).

Plaintiff's other allegations regarding the restrictions on her mail and the search of her cell in which she alleges documents related to her upcoming criminal case were improperly read and went missing also fail to demonstrate any actual injury. See, supra at 7-9.[4] Plaintiff also concedes that she was provided an opportunity to review her mail for anything she needed for her defense and declined. See Dkt. No. 13-9 at 3. Assuming plaintiff is alleging a claim for violation of her First Amendment right to send and receive mail, she must show "that prison

---

[4] In a habeas action plaintiff has pending before the Court, No. 1:20cv46, plaintiff provides copies of numerous letters she sent and received while in RRJ, as well as several motions she filed. These documents include two letters she sent to her attorney, ten letters she sent to the circuit court/clerk, nine responses she received from the court/clerk, and six motions she filed on behalf of herself. Id., Dkt No. 1-1 through 1-22. Apart from habeas petitions, plaintiff has also filed over forty lawsuits in this Court, most of which were filed during March through June 2019.

officials 'regularly and unjustifiably interfered with . . . [her] mail.'" Davis v. Goord, 320 F.3d

346, 351 (2d Cir. 2003).[5]  She does not allege she suffered any harm because she was denied

mail.

Regarding plaintiff being housed in segregation, as a pretrial detainee, at least at the time

plaintiff alleges she was placed in segregation, she was entitled to due process before being

placed in segregation as punishment. See Dilworth v. Adams, 841 F.3d 246, 253 (4th Cir. 2016).

Pretrial detainees have a constitutional right "to be free from punishment." See Bell v. Wolfish,

441 U.S. 520, 535 (1979).  To prevail, plaintiff must show that a restriction was either: "(1)

imposed with an expressed intent to punish or (2) not reasonably related to a legitimate

nonpunitive governmental objective, in which case an intent to punish may be inferred." Slade

v. Hampton Roads Reg'l Jail, 407 F.3d 243, 251 (4th Cir. 2005) (citation omitted).  Bell

recognizes that "maintaining institutional security and preserving internal order and discipline

are essential goals that may require limitation or retraction of the retained constitutional rights of

both convicted prisoners and pretrial detainees."  441 U.S. at 546.  RRJ did not act with the

intent to punish plaintiff, but to prevent and deter crime, and to maintain institutional security

and preserve internal order.

Plaintiff has not alleged any specific due process violation, or indeed any specificity

regarding who placed her in segregation or any of the facts surrounding her placement in

---

[5] The Fourth Circuit Court of Appeals has held, however, that "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and therefore, constitutional." Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999).  Therefore, an inmate's "First Amendment rights are not violated when his outgoing mail is simply opened and inspected for, among other things, contraband." Id. at 549.  Given the serious nature of plaintiff's conduct that led to the restrictions on her mail, Altizer would apply to incoming mail as well.  RRJ knew plaintiff had attempted to solicit a murder-for-hire while in jail, but they did not necessarily know the extent of her efforts, who else she may have contacted, or any other methods she may have employed to accomplish her end.  Under the circumstances, RRJ acted prudently.

segregation for an extended period and if there are or have been any reviews of her housing classification. To the extent plaintiff alleges a due process violation, such a claim has no merit or factual support. If "a restriction imposed by the jail officials is for administrative purposes – which include managerial and security needs – the level of process to which the pretrial detainee is entitled is diminished." Williamson v. Stirling, 912 F.3d 154, 175 (4th Cir. 2018). A jail may take immediate preventative action to segregate a detainee for safety or security reasons after serious criminal or violent conduct. Dilworth, 841 F.3d at 255.

Jails have legitimate interests in maintaining jail security and ensuring inmate safety, including segregating inmates from other inmates for safety reasons. See Bell, 441 U.S. at 539-40, 546-47, 548 n.29. Jail policies reasonably related to the legitimate institutional interests they are intended to advance do not, "without more, amount to 'punishment.'" Id. at 539. Given plaintiff's attempt to solicit someone to commit murder, she has no legitimate argument that RRJ was unwarranted in placing restrictions on her and housing her in administrative segregation. As noted earlier, RJJ had an "important penological interest[]" to deter her "from using the telephone in furtherance of criminal activity inside and outside the jail, and detecting, preventing, and prosecuting such activity when it does occur." Lentz, 419 F. Supp. 2d at 835. Given the nature of plaintiff's attempted criminal conduct, RRJ's response was not "excessive." Robles v. Prince George's County, 302 F.3d 262, 269 (4th Cir. 2002).

To the extent plaintiff seeks to allege a violation of her rights under the Fourteenth Amendment's Equal Protection Clause, she has failed to state a claim upon which relief can be granted.

> The Equal Protection Clause requires that similarly situated persons be treated similarly. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). When alleging an equal protection violation, a plaintiff must make more than a threshold showing that he and the comparator inmate were treated

13

> differently and were similarly situated.  He must also show that the different
> treatment was the result of intentional discrimination.  The Supreme Court made
> it clear in <u>Arlington Heights v. Metropolitan Housing Dev. Corp.</u>, 429 U.S. 252,
> 265 (1977), that "proof of . . . discriminatory intent or purpose is required to show
> a violation of the Equal Protection Clause."

<u>Wenzler v. Warden of G.R.C.C.</u>, 949 F. Supp. 399, 402-403 (E.D. Va. 1996).  RRJ did not

intentionally discriminate against plaintiff.  Instead, RRJ acted to prevent criminal activity and to

secure its institutional security.  "Although a plaintiff does not have to make an evidentiary

showing at this stage, 'conclusory allegations of discrimination . . . not supported by any

reference to particular acts, practices, or policies' are insufficient to state a claim of

discrimination under § 1983.  <u>United Black Firefighters of Norfolk v. Hirst</u>, 604 F.2d 844, 847

(4th Cir. 1979)."  <u>Wenzler</u>, 949 F. Supp. at 403.  Plaintiff has not alleged she was treated any

different than a similarly situated prisoner, and this portion of her complaint will be dismissed.

To the extent plaintiff seeks to claim defendant Grimes retaliated against her by not

responding to her complaints and grievances, and that the restrictions placed upon her were in

retaliation for the grievances, her retaliation allegation is wholly conclusory.  First, she has no

constitutional entitlement to grievance procedures or access to any such procedure voluntarily

established by a state.  <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).  Second, claims of

retaliation are generally treated with skepticism because "[e]very act of discipline by prison

officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct."

<u>Adams</u>, 40 F.3d at 74.  To succeed on a retaliation claim, plaintiff must allege and show facts

establishing that an alleged act of retaliation was in direct response to her exercise of a

constitutionally protected right or that the act itself violated a constitutionally protected right.  <u>Id.</u>

at 75.  She must allege and show specific facts to establish: (1) the existence of a specific

constitutional right; (2) a retaliatory adverse act; and (3) causation.  <u>Hoye v. Gilmore</u>, 691 F.

App'x 764, 765 (4th Cir. 2017) (citing <u>Raub v. Campbell</u>, 785 F.3d 876, 885 (4th Cir. 2015)).

14

> The test for causation requires an inmate show that, but for the exercise of the
> protected right, the alleged retaliatory act would not have occurred.  Peterson v.
> Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); Babcock v. White, 102 F.3d 267,
> 275 (7th Cir. 1996) ("the ultimate question is whether events would have
> transpired differently absent the retaliatory motive").  Retaliation against an
> inmate for the exercise of his right of access to the courts states such a claim.
> Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978).

Lamp v. Wallace, Civil Action No. 3:04CV317, 2005 U.S. Dist. LEXIS 43932, *9-10, 2005 WL

5303512 (E.D. Va. Mar. 23, 2005).  Plaintiff has alleged nothing more than a "bare assertion" of

retaliation, which is insufficient "to establish a claim of constitutional dimension."  Adams, 40

F.3d at 75.  Therefore, any retaliation claim against Superintendent Grimes will be dismissed

with prejudice.

 *B. Defendant Foley*

 Plaintiff has sued defendant Foley in his individual and official capacity as the

Administrator of Stafford County.  The Rappahannock Regional Jail Authority (RRJA) was

established pursuant to the Virginia Code and operates the RRJ, which is where plaintiff alleges

the violations of her rights occurred.  See Dkt. No. 1-2 at 3, 6.  Defendant Foley's only

connection to RRJ is that he is one of the twelve members of the RRJA Board.[6]  Plaintiff has

alleged no facts to connect Foley with her complaints regarding the restrictions placed upon her

at RRJ, and Foley's motion to dismiss is well taken.  Plaintiff's attempt to impose liability on

defendant Foley is, at best, a rejected vicarious liability theory.

> In Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), we
> decided that a municipality can be found liable under § 1983 only where the
> municipality itself causes the constitutional violation at issue.  Respondeat
> superior or vicarious liability will not attach under § 1983.  Id., at 694-695.  "It is
> only when the 'execution of the government's policy or custom . . . inflicts the
> injury' that the municipality may be held liable under § 1983."

---

[6]  See https://www.rrj.state.va.us/jail-authority-board (last viewed April 2, 2020).

City of Canton v. Harris, 489 U.S. 378, 385 (1989).

To establish liability under §1983, plaintiff must demonstrate that defendant Foley has proximately caused a constitutional violation that has injured plaintiff. See Harris, 489 U.S. 378, 385. As an initial matter, because there is no actionable constitutional violation for the reasons discussed above, there is no basis for municipal liability. Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999) (no underlying constitutional violation, no municipal liability). Even assuming a constitutional violation, however, when bringing a suit against an individual in their official capacity plaintiff

> "must show on the face of the complaint that a 'policy or custom' of the entity is implicated in the violation of federal law. Kentucky v. Graham, 473 U.S. 159, 165 (1985); Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). To state a Section 1983 claim against an individual in their personal capacity, one must allege that the individual personally caused the deprivation of a federal right. Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Graham, 473 U.S. at 166); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1971).

Myer v. Northam, Civil Action No. 1:18-cv-723, 2018 U.S. Dist. LEXIS 209039, *6, 2018 WL 6515140 (E.D. Va. Dec. 11, 2018). Plaintiff has failed to allege a policy or custom instituted by Stafford County/defendant Foley that led to the treatment she received while at RRJ. Without such an allegation, plaintiff has not stated a plausible claim for relief against defendant Foley. Id. at *4.

C. Leave to Amend

This case comes before the Court in a somewhat unusual posture for a pro se case because it was removed from state court and not screened under 28 U.S.C. § 1915A. Plaintiff has sought leave to amend, and defendants Grimes and Foley have each objected. The Fourth Circuit, however, has stated that a court should consider granting plaintiffs, particularly pro se plaintiffs, leave to amend if it dismisses a complaint based on Rule 12(b)(6). See Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999); see also Johnson v. Oroweat Foods Co., 785 F.2d

503, 509 (4th Cir. 1986) (courts need not give leave to amend when amendments would be futile). The defendants' chief objection to the motion to amend is that plaintiff has done it in a piecemeal fashion. See Dkt. Nos. 19 at 1-3; 20 at 2-3.

Due to plaintiff's pro se status, however, the Court will grant her leave to amend. The defendants, however, will not have to answer the piecemeal amended complaint plaintiff has submitted along with her response to the motion to amend. Instead, the piecemeal amended complaint will be denied, and plaintiff will be provided a form upon which she will need to list each defendant she wishes to name in the single document, the specific facts upon which she relies to establish each defendant's liability, and all her facts in the same single document. Plaintiff is advised to consider the legal standards explored above in submitting her amended complaint. An appropriate order shall issue.

Entered this ___20th___ day of ___April___, 2020.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

### INSTRUCTIONS FOR FILING COMPLAINT BY PRISONER UNDER
### CIVIL RIGHTS ACT, 42 U.S.C. § 1983

1.  This complaint must be legibly handwritten or typewritten and signed by the plaintiff. Any false statement of material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

2.  This packet includes three (3) copies of a complaint form and one (1) copy of an *in forma pauperis* affidavit.

3.  In order for this complaint to be filed, it must be accompanied by the **filing fee of $350.00 (28 U.S.C. § 1914(a))** and a **$50.00 administrative fee.** If you do not have the necessary filing fee, you may request permission to proceed *in forma pauperis.* Please complete the enclosed affidavit setting forth information establishing your inability to prepay the fees and costs.

4.  When these forms are complete, they must be mailed to the Clerk of the United States District Court for the Eastern District of Virginia. The address is listed below:

United States District Court
Eastern District of Virginia



401 Courthouse Sq.
Alexandria, VA 22314

5.  Complaints that do not conform to these instructions will be returned with a notation as to the deficiency.

6.  **ALL COPIES OF THE COMPLAINT MUST BE IDENTICAL. DO NOT MAIL THE FORMS TO A SPECIFIC JUDGE.**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. § 1983

Action Number _____
(To be supplied by the Clerk, U.S. District Court)

Please fill out this complaint form completely.  The Court needs the information requested in order to assure that your complaint is processed as quickly as possible and that all your claims are addressed.  Please print/write legibly or type.

I.    **PARTIES**

A.    **Plaintiff:**

1.    (a) _____ (b) _____
(Name)                                  (Inmate number)

(c) _____
(Address)

_____

**Plaintiff MUST keep the Clerk of Court notified of any change of address due to transfer or release.  If plaintiff fails to keep the Clerk informed of such changes, this action may be dismissed.**

**Plaintiff is advised that only persons acting under the color of state law are proper defendants under Section 1983.  The Commonwealth of Virginia is immune under the Eleventh Amendment.  Private parties such as attorneys and other inmates may not be sued under Section 1983.  In addition, liability under Section 1983 requires personal action by the defendant that caused you harm.  Normally, the Director of the Department of Corrections, wardens, and sheriffs are not liable under Section 1983 when a claim against them rests solely on the fact that they supervise persons who may have violated your rights.  In addition, prisons, jails, and departments within an institution are not persons under Section 1983.**

B.    **Defendant(s):**

1.    (a) _____ (b) _____
(Name)                                  (Title/Job Description)

(c) _____
(Address)

2.  (a) _____ (b) _____
         (Name)                              (Title/Job Description)

    (c) _____
         (Address)

        _____

3.  (a) _____ (b) _____
         (Name)                              (Title/Job Description)

    (c) _____
         (Address)

        _____

If there are additional defendants, please list them on a separate sheet of paper.  Provide all identifying information for each defendant named.

**Plaintiff MUST provide a physical address for defendant(s) in order for the Court to serve the complaint.  If plaintiff does not provide a physical address for a defendant, that person may be dismissed as a party to this action.**

## II.   PREVIOUS LAWSUITS

A.   Have you ever begun other lawsuits in any state or federal court relating to your imprisonment?   Yes [  ]   No [  ]

B.   If your answer to "A" is Yes: You must describe any lawsuit, whether currently pending or closed, in the space below.  If there is more than one lawsuit, you must describe each lawsuit on another sheet of paper, using the same outline, and attach hereto.

1.   Parties to previous lawsuit:

Plaintiff(s) _____

Defendant(s) _____

_____

2.   Court (if federal court, name the district; if state court, name the county):

_____

3.   Date lawsuit filed: ___ _____

4.   Docket number:

5.  Name of Judge to whom case was assigned: _____

_____

6.  Disposition (Was case dismissed?  Appealed?  Is it still pending?  What relief was granted, if any?) : _____

_____

## III.  GRIEVANCE PROCEDURE

A.  At what institution did the events concerning your current complaint take place: _____

_____

B.  Does the institution listed in "A" have a grievance procedure?  Yes [   ]  No [   ]

C.  . If your answer to "B" is Yes:

    1.  Did you file a grievance based on this complaint?  Yes [   ]  No [   ]

    2.  If so, where and when: _____

    3.  What was the result? _____

    _____

    4.  Did you appeal?  Yes [   ]  No [   ]

    5.  Result of appeal: _____

    _____

D.  If there was no prison grievance procedure in the institution, did you complain to the prison authorities?  Yes [   ]  No [   ]

If your answer is Yes, what steps did you take? _____

_____

E.  If your answer is No, explain why you did not submit your complaint to the prison authorities:

_____

_____

**IV.    STATEMENT OF THE CLAIM**

State here the facts of your case.  Describe how each defendant is involved and how you were harmed by their action.  Also include the dates, places of events, and constitutional amendments you allege were violated.

If you intend to allege several related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets if necessary.

## V.   RELIEF

I understand that in a Section 1983 action the Court cannot change my sentence, release me from custody or restore good time.  I understand I should file a petition for a writ of habeas corpus if I desire this type of relief. _____ (please initial)

The plaintiff wants the Court to: (check those remedies you seek)

_____ Award money damages in the amount of $ _____

_____ Grant injunctive relief by _____

_____ Other _____

## VI.   PLACES OF INCARCERATION

Please list the institutions at which you were incarcerated during the last six months.  If you were transferred during this period, list the date(s) of transfer.  Provide an address for each institution.

_____

_____

_____

## VII.   CONSENT

CONSENT TO TRIAL BY A MAGISTRATE JUDGE:  The parties are advised of their right, pursuant to 28 U.S.C. § 636(c), to have a U.S. Magistrate Judge preside over a trial, with appeal to the U.S. Court of Appeals for the Fourth Circuit.

Do you consent to proceed before a U.S. Magistrate Judge: Yes [    ]  No [    ]. You may consent at any time; however, an early consent is encouraged.

## VIII.   SIGNATURE

If there is more than one plaintiff, each plaintiff must sign for himself or herself.

Signed this _____ day of _____, 20_____ .

Plaintiff _____