**FILED**

JAN 1 2 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

Cassie C. Crisano,                    )
    Plaintiff,                    )
               )
v.                                    )          1:19cv1612 (CMH/TCB)
               )
Phil Grimes, et al.,                  )
    Defendants.                   )

### MEMORANDUM OPINION

Cassie C. Crisano, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 in the Circuit Court of Stafford County, Virginia (Civil Case No. 19-2219) on July 19, 2019. [Dkt. No. 1-2 at 3]. Defendant Grimes was served on December 4, 2019 and removed the matter to federal Court on December 24, 2019. [Id. at 1]. Grimes filed a motion to dismiss and brief in support on December 31, 2019 [Dkt. Nos. 4, 5 ], defendant Foley filed a motion to dismiss and brief in support on February 5, 2020 [Dkt. No. 11, 12], and Crisano sought leave to amend on February 26, 2020. [Dkt. No. 13]. By order entered April 20, 2020, the Court granted defendants Grimes' and Foley's motions to dismiss but also granted Crisano leave to amend her complaint. [Dkt. No. 26]. Following several extensions of time, Crisano filed an amended complaint dated October 16, 2020. [Dkt. No. 36].[1] Grimes has moved to dismiss the amended complaint and filed a brief in support of his motion.[2] [Dkt. No. 37, 38]. Crisano has been afforded the opportunity to file responsive materials pursuant to Roseboro v.

---

[1] Crisano executed her amended complaint on October 16, 2020, which is the earliest date the pleading could have been filed. See Houston v. Lack, 487 U.S. 266, 276 (1988) (pleading considered filed when delivered to prison officials for mailing).

[2] Foley's motion to dismiss was granted [Dkt. No. 26]. Crisano has not named him as a defendant in her amended complaint [Dkt. No. 36 at 1-4], and she expressly asked that Foley be dismissed as a defendant on October 5, 2020. [Dkt. No. 35].

Garrison, 528 F.2d 309 (4th Cir. 1975), and has responded.  Accordingly, this matter is now ripe

for disposition.  For the reasons that follow, Grimes' motion to dismiss must be granted, and the

amended complaint dismissed.

## I. Background

In her original complaint filed in July 2019, Crisano named six defendants and alleged

seven claims: that the defendants had violated her constitutional right of access to the courts by

restricting her use of the phone to communicate with her attorney; violated her attorney client

privacy; denied her DC-311 forms (district court criminal complaint forms); restricted her mail

and facility access; searched her legal documents/mail without her present; limited her access to

the law library; and improperly placed her in segregation.  [Dkt. No. 1].  Grimes removed the

matter to this Court in December 2019 and he and Foley moved the Court to dismiss the

complaint for failure to state a claim upon which relief could be granted.  Crisano filed a

response seeking to amend her complaint on February 26, 2020.  [Dkt. No. 13].

In its Memorandum Opinion entered April 20, 2020, the Court found the claims set forth

in the original complaint failed to state a claim.  Crisano's motion to amend her complaint

provided no context for relevance and was, in essence, an unintelligible unorganized morass that

was impossible to review.  Crisano's amended complaint consisted of over 100, mostly illegible,

copies of various request forms; grievances; copies of letters to politicians; receipts for

unauthorized mail; portions of what appear to have been drafts of pleadings; handwritten notes;

and various other documents.  In deference to her pro se status and because the complaint had

never been screened, the Court granted Crisano leave to submit a "proper amended complaint."

[Dkt. No. 26 at 2].

Crisano sought and was granted numerous extensions of time to file her amended complaint, which she finally filed on October 22, 2020.  In reviewing the amended complaint, it became instantly clear that Crisano had not filed a "proper amended complaint."  Instead, Crisano was attempting to add several new claims and new defendants, all of whom had nothing to do with the claims she had raised in the original complaint.  Crisano's attempt to expand her civil action in this matter raises issues of joinder that need to be addressed.

## II. Amended Complaint

"An amended pleading is one which clarifies or amplifies a cause of action which can be identified with certainty as the same cause of action *originally pleaded or attempted to be pleaded*, and it is a perfection of an original pleading rather than the establishment of a new cause of action."  Superior Mfg. Corp. v. Hessler Mfg. Co., 267 F.2d 302, 304 (10th Cir. 1959).  When there is no "nexus between the events alleged in [the] original complaint and those alleged in [the] proposed supplemental complaint," or if the new events did not arise "out of the same conduct or occurrences as those in the original pleading," leave to amend a complaint will be properly denied.  Klos v. Haskell, 835 F. Supp. 710, 716 (W.D.N.Y. 1993), aff'd, 48 F.3d 81 (2d Cir. 1995).

In the context of lawsuits brought by prisoners against governmental actors, "[u]nrelated claims against different defendants belong in different suits."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing Fed. R. Civ. P 18).  Under Rule 18, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  Id. at 607.  Under Rule 20, persons may be joined in one action as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of

3

transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  Both of the requirements of Rule 20(a) must be satisfied in order to sustain party joinder under the rule.  See Intercon Research Assocs., Ltd. v. Dresser Indus., 696 F.2d 53, 57 (7th Cir. 1982).

Moreover, in allowing an amended complaint a court "must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)" in "determining whether to grant a motion to amend to join additional" defendants. Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 618 (4th Cir. 2001).  A court has the discretion to deny a motion to amend and add additional defendants if granting such a motion does "not enhance judicial economy."  Saval v. BL, Ltd., 710 F.2d 1027, 1032 (4th Cir. 1983).  Rule 20 does not authorize a plaintiff to "incorporate into an existing action a different action against different parties and presenting entirely different factual and legal issues."  Trail Realty, Inc. v. Beckett, 462 F.2d 396, 399-400 (10th Cir. 1972).  Finally, Rules 18 and 20(a) preclude plaintiffs from pursuing claims through a "buckshot" or "mishmash" complaint, George, 507 F.3d at 607, and a court may "deny joinder [of multiple defendants] if it determines that the addition of the party under Rule 20 will not foster the objectives of [trial convenience and expeditious resolution of disputes], but will result in prejudice, expense, or delay."  Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 n.5 (4th Cir. 2007).

The original complaint named six defendants: Rappahannock Regional Jail (RRJ), Phil D. Grimes, Superintendent; Captain Norris; First Sgt. Branson; Cpl. Jacobs, and Thomas Foley. [Dkt. No. 1-2 at 3, 8].  The amended complaint names twelve defendants, five from the original complaint, seven who were not named in the original complaint, and does not name Foley (who was a named defendant in the original complaint) as a defendant.  The twelve defendants in the

amended complaint are: Rappahannock Regional Jail (RRJ), Phil D. Grimes, Superintendent; Houston Norris,[3] Captain; First Sgt. Branson; Cpl. Jacobs; Cpl. Moore; Sgt. Teye; Keith Hudson, Superintendent; M. Gale, Jail Counselor; C. Stevenson, Jail Counselor; Sgt. Stoy; and Sgt. Adcock. [Dkt. No. 36 at 1-4]. The claims in the amended complaint are:

1. Crisano alleges that from November 16, 2018 through October 5, 2020, Correctional Officer's monitored her telephone calls with her attorney at the direction of Superintendent Grimes. Crisano alleges that the following personnel monitored her telephone calls with her attorney: Sgt. Stoy, Counselor Gale, Cpl. Moore and Correctional Officer Padgett. [Id. at 7]. Plaintiff alleges that other inmates could hear her conversations and used information they heard to obtain "plea deals." [Id.].

2. Crisano alleges that from May 1, 2019 through June 1, 2019, she was denied criminal complaint forms and refused access to the United States District Court and the Stafford Circuit Court by defendants Grimes and Norris. [Id.].

3. On July 10, 2019, Crisano's cell was searched by First Sgt. Branson, Cpl. Jacobs; Cpl. Moore Sgt. Adcock. During the search "water and fiber powder spilled over plaintiff's legal documents that were thrown on the floor by the Officers. Legal documents were missing." [Id. at 8].

4. On November 18, 2018 through October 8, 2020, Crisano filed grievances that were improperly processed by Counselor Stevenson. The grievances were rejected for technical reasons (request forms not attached, the matter was not grievable, and she had provided insufficient facts); her grievances were not investigated; and Crisano "suffered retaliation through delays trying to contact her attorney." [Id.].

5. From May 15, 2019 through December 31, 2019, defendant Grimes gave Sgt. Taylor and Counselor Gale orders to "monitor and listen to all of [Crisano's] legal calls." [Id.]. Crisano notified Grimes that the monitoring violated attorney client privilege on November 27, 2018.

6. On November 15, 2018 through June 2, 2019, defendants Grimes and Norris refused to allow Crisano to send or receive mail and denied contact with her attorney. Due to the restrictions on her mail, Crisano was denied exculpatory evidence for her defense. [Id. at 8-9].

7. Crisano was denied access to the law library on the following dates 11/18/19, 11/19/19, 11/24/19, 11/27/19 and 12/2/19 by Cpl. Jacobs, and on the following dates 11/25/19, 11/26/19, 11/29/19, 11/30/19 and 12/1/19 by Sgt Story in retaliation for her filing against them. [Id. at 9].

8. On October 15, 2018, March 21, 2019, and May 9, 2019, Sgt. Stoy, Cpl. Jacobs and Sgt. Adcock removed Crisano from her cell just prior to her trial dates and upon her return "legal documents [that] were needed and necessary for effective legal

---

[3] According to Crisano, defendant Norris passed away on August 12, 2019. [Dkt. No. 30].

arguments were missing or destroyed." [Id. at 10].

9. On September 11, 2020, Crisano advised Cpl. Moore via a request form that the floors in her housing unit had not been swept or mopped in months and Cpl. Moore filed an institutional charge against Crisano in retaliation for filing the request. Sgt. Teye heard the charge and found Crisano guilty and imposed the following sanctions: seven days in isolation, a $10 fine, no visits, no telephone privileges, no books, no TV, no programs, and no commissary. [Id.]. Crisano appealed and on September 15, 2020, Superintendent Hudson reduced the sanctions to three days in isolation.

10. On September 14, 2020, Crisano filed a grievance with three request forms to Counselor Stevenson, and it was returned because Crisano had not pursued requests prior to grieving the matter. [Id. at 10-11].

11. Cpl. Moore refused to place Crisano on the list for legal calls on the following dates: 9/11/20, 9/12/20, 9/13/20, 9/16/20, 9/17/20, 9/21/20, 9/22/20, 9/26/20, and 9/27/20. The refusal was retaliation for Crisano filing complaints on Cpl. Moore and Crisano's complaints about the uncleanliness of her housing unit. Crisano complained to Superintendent Hudson who said he would look into it. [Id. at 11].

12. On September 13, 2020, Cpl. Moore threatened she would pull Crisano out of her cell if Crisano filed any more complaints. Crisano complained to Superintendent Hudson and asked to be moved because she did not feel safe in that housing unit anymore. [Id.].

13. On September 2, 2020, Crisano's attorney dropped legal documents off for her at the jail. Crisano's attorney told her about the documents on September 10, 2020. Crisano requested the documents but did not receive them until September 28, 2020 and when examined the documents were out of order and some documents were missing. [Id.]. On September 10, 2020, Crisano was charged with failure to obey orders of RRJ staff for requesting her legal documents and placed in isolation for two days. She filed a grievance on September 13, 2020 to Superintendent Hudson and was punished for filing a grievance. [Id.].

14. On December 5, 2018, through September 22, 2019 (79 days), Crisano was placed in isolation in retaliation for filing an ADA complaint. [Id. at 12]. On April 5, 2019, the ADA complaint was sent to RRJ for investigation. First Sgt. Simpson denied all of her complaints (17 filed from 11/29/18 through 12/31/18) and removed request forms from her file which Crisano saved. [Id. at 12].

15. On July 13, 2020, Cpl. Moore charged Crisano for telling a kitchen worker that she was discriminating against Crisano and had to bring her kosher meals because Crisano is Jewish. Crisano was found guilty and placed in isolation for seven days. Cpl. Moore charged Crisano in retaliation for Crisano filing a grievance against Cpl. Moore. Crisano appealed her charge to Superintendent Hudson but he did not reverse it. [Id.].

16. On August 2, 2020, an African female detainee put a piece of paper over her window and Cpl. Moore "begged her" to take it down. The detainee agreed and Cpl. Moore agreed to give the detainee's boyfriend in another unit a message. On October 5 and 6, 2020, the detainee threatened Cpl. Sah and Cpl. Moore did not charge the detainee.

6

On October 6, 2020, the detainee also "smashed the pod phone and ripped the cord out." The phone was fixed the next day and the detainee was "the first one on it." The detainee and Crisano have been in the same unit for over a year and Crisano "gets charged for minor stuff" but the detainee "threatens all the [Correctional Officers] every morning and no one writes her up, particularly Cpl. Moore." Crisano has written numerous complaints to Sgt. Taylor but no corrective action has been taken. [Id. 12-13].

17. Crisano "has been consistently subject to retaliatory acts by [RRJ] employees due to [Crisano]'s continued complaints against [RRJ] employees. Superintendent Hudson has done nothing to resolve the prior incidents involving his subordinates' failures to follow RRJ policies and procedures. [Id. at 13].

18. Crisano 'has been subjected to violations of her 6th, 5th, and 14th Amendment rights and her right to due process. [Crisano]'s 8th Amendment right to be free from cruel and unusual punishment by the defendants out of retaliation to [Crisano] for exercising her 8th Amendment right." [Id.].

The amended complaint includes claims set forth in the original complaint but adds a significant number of new claims. Claims 1-8 and 14 relate to the claims raised in the original complaint but claims 9-17 do not. Claim 18 is conclusory, not supported by any facts, and references no defendant.

Allowing the amended complaint would require having to address nine new claims involving numerous new defendants and would further delay a matter that has now been in the initial pleading stage for over 18 months. Crisano's original complaint was almost exclusively about interreference with her right to counsel because her telephone calls were monitored. [Dkt. No. 1-2 at 3-6]. She also complained about not being given the DC-311 criminal complaint forms, access to the courts, and that some of her legal documents were missing after a search of her cell on July 10, 2019 (similar searches occurred on October 15, 2018, November 27, 2018, March 21, 2019, and May 9, 2019) [Id. at 12-17]. Claims 9-13 and 15-17 raise new issues and involve matters that occurred after July 13, 2020, which is nearly a year after the original complaint was filed in July 2019. In her amended complaint:

- claim 9 concerns the cleanliness of the unit in which Crisano is housed;

- claim 10 concerns a grievance involving Counselor Stevenson who was not a defendant in the original complaint;

- claim 11 involves "legal calls" Crisano requested in September 2020, which involved a different set of criminal cases she had pending than those at issue in the original complaint;[4]

- claim 12 involves an alleged threat made by Cpl. Moore in September 2020 and an appeal to Superintendent Hudson's response;[5] neither Cpl. Moore nor Superintendent Hudson were defendants in the original complaint;

- claim 13 involves a disciplinary conviction for conduct that occurred in September 2020 and an appeal to Superintendent Hudson;

- claim 14 alleges a violation of the American Disability Act but does not name any of the designated defendants;

- claim 15 involves a disciplinary conviction in July 2020 and an appeal to Superintendent Hudson;

- claim 16 involves conduct in September and October 2020, a charge of unequal treatment and a grievance to Superintendent Hudson; and

- claim 17 is conclusory and alleges Superintendent Hudson has failed to address retaliatory acts by RRJ staff.

---

[4] Crisano has two sets of criminal cases in Stafford County. The claims in the original complaint concerned her first trial on August 6, 2019 in which Crisano was tried on eleven indictments, found her not guilty on three indictments (Commonwealth v. Crisano, Case Nos. CR291-06 through -08), two indictments were ended by the nolle prosequi (Commonwealth v. Crisano, Case Nos. CR291-04, 10), and six indictments resulted in convictions (offense dates October 1, 2018) (Commonwealth v. Crisano, Case Nos. CR291-00 through -03, -05, -09). Virginia Judicial System, Case Status and Information, Circuit Court, Stafford County, http://www.courts.state.va.us/caseinfo/home.html#cc (drop down menu for Stafford Circuit Court) (last viewed Jan. 11, 2021) (hereinafter Case Status and Information System). Crisano was sentenced on December 13, 2019. The Court of Appeals of Virginia denied her petition for appeal on October 28, 2020. Crisano v. Commonwealth, Record No. 2039-19-4. Case Status and Information System (drop down menu for Court of Appeals) (last viewed Jan. 11, 2021). Crisano's appeal is pending in the Supreme Court of Virginia. Crisano v. Commonwealth, Record No. 201441. Case Status and Information (drop down menu for Supreme Court of Virginia) (last viewed Jan. 11, 2021). Crisano has 21 additional indictments pending in Stafford Circuit Court. See (Commonwealth v. Crisano, Case Nos. CR18-180-00 through -20), with trial dates set for March 30 through April 2, 2021 and April 21-22, 2021. See Lyons v. Stovall, 188 F.3d 327, 333 (6th Cir. 1999) (federal courts may take judicial notice of proceedings in other courts of record); Tinker v. Sears, Roebuck & Co., 127 F.3d 519, 524 (6th Cir. 1997).

[5] Defendant Hudson is mentioned in claim 12, which allegedly occurred in July 2020. For purposes of this opinion, the Court will assume that, by at least July 2020, Hudson had been installed as the Superintendent of RRJ.

In short, these claims have no relation to the claims advanced in the original complaint. For this reason alone, claims 9-17, will be dismissed without prejudice.

In addition, and of equal importance, a court has to prevent a case from becoming a case management "morass," and prevent litigious prisoners from avoiding the impact of the three-strikes rule in the Prison Litigation Reform Act ("PLRA"). As noted previously, unrelated claims against different defendants need to be pursued by prisoners in different suits. George, 507 F.3d at 607; see Owens v. Godinez, 860 F.3d 434, 436 (7th Cir. 2017) (district courts should not allow inmates "to flout the rules for joining claims and defendants, … or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint.") (citing Fed. R. Civ. P. 18, 20); Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."); Brown v. Blaine, 185 Fed. Appx. 166, 168-69 (3d Cir. 2006) (affirm district court's order dismissing first amended complaint because plaintiff sought to add unrelated claims against new defendants based on actions taken after the filing of the original complaint which "would defeat the purpose of the three strikes provision of the PLRA" and noting plaintiff was free to file a new complaint) (citations omitted); see also Scott v. Kelly, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes' rule). Crisano's litigious nature caused her to fall under the three-strikes rule on June 24, 2019 in Crisano v. Decatur et al., No. 1:19cv731, along with thirty other civil rights actions she has filed in this Court since March 21, 2019. She has one suit other than this case still pending,

9

Crisano v. Rappahannock Regional Jail et al., No. 1:19cv734.[6]  This case did not fall under the

three-strikes rule because Crisano did not file it in federal court.  See Lisenby v. Lear, 674 F.3d

259, 262-63 (4th Cir. 2012) (holding that remand of a "three strikes" prisoner's civil action to

state court was improper because the district court had subject matter jurisdiction of the removed

claims, and the district court lacked legal authority under the PLRA to deprive the defendants of

---

[6] Excluding habeas petitions and this matter, Crisano has filed 40 civil actions is this Court since March 21, 2019: Crisano v. Unknown, No. 1:19cv337 (E.D. Va. May 23, 2019); Crisano v. Stafford County Sheriff, No. 1:19cv485 (E.D. Va. June 12, 2020); Crisano v. Shenandoah County Sheriff, No.1:19cv00487 (E.D. Va. June 20, 2020); Crisano v. Fairfax County Fire Marshall, No. 1:19cv488 (E.D. Va. Apr. 13, 2020); Crisano v. Hopkins, No. 1:19-cv-00489 (E.D. Va. May 2, 2019); Crisano v. Virginia State Police, No. 1:19cv512 (E.D. Va. May 24, 2019); Crisano v. Greer, No. 1:19cv569 (E.D. Va. June 20, 2019); Crisano v. Byies, 1:19cv661 (E.D. Va. June 24, 2019); Crisano v. Fairfax County Fire Marshal T.L. Fayson, No. 1:19cv662 (E.D. Va. June 24, 2019); Crisano v. Stafford County Sheriff Deputy Mervel, No. 1:19cv00663 (E.D. Va. June 24, 2019); Crisano v. Stafford County Sheriff Deputy Monaghans, No. 1:19cv664 (E.D. Va. June 24, 2019); Crisano v. Stafford County Sheriff Deputy J.S. Massine, No. 1:19cv665 (E.D. Va. June 24, 2019); Crisano v. Stafford County Sheriff Deputy Tripphaney, No. 1:19cv666 (E.D. Va. June 24, 2019); Crisano v. Rappahannock Regional Jail, No. 1:19cv667 (E.D. Va. June 24, 2019); Crisano v. Stafford County, No. 1:19cv00668 (E.D. Va. June 20, 2019); Crisano v. Shenandoah County, No. 1:19cv669 (E.D. Va. June 24, 2019); Crisano v. Shenandoah County, No. 1:19cv670 (E.D. Va. June 24, 2019); Crisano v. Stafford County Sheriff, No. 1:19cv671 (E.D. Va. June 24, 2019); Crisano v. Brown, No. 1:19cv672 (E.D. Va. June 24, 2019); Crisano v. Stafford County et al., No. 1:19cv684 (E.D. Va. June 24, 2019); Crisano v. Linton, No. 1:19cv685 (E.D. Va. June 24, 2019); Crisano v. Linton, No. 1:19cv687 (E.D. Va. June 24, 2019); Crisano v. Linton, No. 1:19cv692 (E.D. Va. June 24, 2019); Crisano v. Byies, No. 1:19cv694 (E.D. Va. June 24, 2019); Crisano v. Hopkins, No. 1:19cv0696 (E.D. Va. June 24, 2019); Crisano v. Stafford County et al., No. 1:19cv0698 (E.D. Va. June 24, 2019); Crisano v. Stafford County et al., No. 1:19cv699 (E.D. Va. June 24, 2019); Crisano v. Stafford County et al., No. 1:19cv700 (E.D. Va. June 24, 2019); Crisano v. Stafford County et al., No. 1:19cv701 (E.D. Va. June 24, 2019); Crisano v. Pentagon Officer Anthony James Hopkins et al., No. 1:19cv702 (E.D. Va. June 24, 2019); Crisano v. Rappahannock Regional Jail et al., No. 1:19cv727 (E.D. Va. June 24, 2019); Crisano v. Linton, No. 1:19-cv-29 (E.D. Va. June 24, 2019); Crisano v. Linton, No. 1:19cv728 (E.D. Va. June 24, 2019); Crisano v. Reyes et al., No. 1:19cv730 (E.D. Va. June 24, 2019); Crisano v. Decatur et al., No. 1:19cv731 (E.D. Va. June 24, 2019); Crisano v. Linton, No. 1:19cv732 (E.D. Va. June 24, 2019); Crisano v. Hopkins et al., No. 1:19cv733 (E.D. Va. June 24, 2019); Crisano v. The Freelance Star, No. 1:19cv807 (E.D. Va. June 24, 2019); Crisano v. Rappahannock Regional Jail et al., No. 1:19cv1391 (E.D. Va. June 24, 2019); Crisano v. Rappahannock Regional Jail, No. 1:19cv1635 (E.D. Va. June 10, 2019); Crisano v. Foley, No. 1:20cv143 (E.D. Va. Nov. 2, 2020).

a federal forum); accord Lloyd v. Benton, 686 F.3d 1225, 1227 (11th Cir. 2012) (concluding that PLRA did not deprive district court of its original jurisdiction over "three strikes" inmate's § 1983 action, which had been properly removed by defendants, and thus district court's remand of action to state court was inappropriate).

Since the PLRA "limits to three the number of frivolous suits or appeals that any prisoner may file without prepayment of the required filing fees," allowing such inmates to misjoin claims and defendants could allow a vexatious in forma pauperis inmate plaintiff to evade the impact of the three-strikes rule by joining all of their disparate claims and defendants together. George, 507 F.3d at 607. Where claims that should be litigated separately have been misjoined, a court may dismiss the claims without prejudice or sever them in its preliminary review. See Wheeler, 689 F.3d at 683 (court can solve the problem of misjoined claims or defendants by "severance (creating multiple suits that can be separately screened) or dismissing the excess defendants under Fed. R. Civ. P. 21").[7] Crisano's amended complaint is an attempt to circumvent the PLRA and bring new unrelated claims and defendants in a pending lawsuit in order to elude the required fees and negate the consequences of her prior litigation. Crisano may not sidestep the PLRA by misjoining claims and defendants.

## II. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief can be granted. Whether a complaint sufficiently states a claim is determined by "the familiar standard... under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be

---

[7] See also Mallard v. United States Dist. Court, 490 U.S. 296, 307-08 (1989) ("Section 1915(d) ... authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have the power to do so even in the absence of this statutory provision.").

dismissed only when "it is clear that no relief could be granted under any set of facts that could

be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A

claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. A

plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice" to meet this standard. Id.

> The court, however, is not bound to accept as true "conclusory allegations
> regarding the legal effect of the facts alleged." Labram v. Havel, 43 F.3d 918,
> 921 (4th Cir. 1995). Indeed, the "presence ... of a few conclusory legal terms
> does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts
> alleged in the complaint cannot support a finding of [liability]." Young v. City of
> Mt. Ranier, 238 F.3d 567, 577 (4th Cir. 2001). Were this not the case, "Rule
> 12(b)(6) would serve no function, for its purpose is to provide a defendant with a
> mechanism for testing the legal sufficiency of the complaint." District 28, United
> Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1086 (4th
> Cir. 1979).

Brown v. Mitchell, 308 F. Supp. 2d 682, 691 (E.D. Va. 2004).

Although district courts have a duty to construe pro se pleadings liberally, a pro se

plaintiff must nevertheless allege facts in a straightforward manner. Beaudett v. City of

Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) ("[d]istrict judges are not mind readers" and the

duty to construe pro se pleadings liberally "does not require [district] courts to conjure up

questions never squarely presented to them"); see, e.g., Jenkins v. Livonia Police Dep't, N0. 13-

14489, 2016 U.S. Dist. LEXIS 23488, *14, (E.D. Mich. Feb. 26, 2016) ("While the Court is

sensitive to the limitations of pro se litigants, it will not ... search the record for factual support

to bolster underdeveloped claims."). Although a court makes some allowances for a pro se litigant, it is not the court's responsibility to "construct[] arguments and search[] the record" to support the litigant's positions. Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005).

### III. Analysis

#### A. Claims 1, 5 and 6

Claims 1, 5 and 6 each involve Crisano's allegations that RRJ defendants violated Crisano's right to counsel by monitoring her telephone calls to her attorney, restricting her mail, and allegations that unspecified legal material was taken. In claim 1, Crisano alleges that from November 16, 2018 through October 5, 2020, Correctional Officers (Sgt. Stoy, Counselor Gale, Cpl. Moore and Correctional Officer Padgett) monitored her telephone calls to her attorney at the direction of Superintendent Grimes. [Id. at 7]. In claim 5, Crisano alleges that Sgt. Taylor and defendant Gale monitored her telephone calls from May 15, 2019 through December 31, 2019, pursuant to defendant Grimes' orders and that Crisano notified Grimes that the monitoring violated her attorney client privilege on November 27, 2018. In claim 6, Crisano alleges that on November 15, 2018 through June 2, 2019, defendants Grimes and Norris refused to allow Crisano to send or receive mail and denied contact with her attorney.[8] Due to the restrictions on her mail, Crisano alleges she was denied exculpatory evidence for her defense. [Id. at 8-9]. While Crisano's claims are more detailed and organized than the claims set forth in her original complaint, she has failed to provide any factual material that cures the deficiencies pointed out in the April 20, 2020 Memorandum Opinion.

---

[8] Crisano did not name either Sgt. Taylor or Correctional Officer Padgett as defendants in her amended complaint. See [Dkt. No. 36 at 1-4].

Crisano cannot maintain a claim against defendants Grimes or Norris, supervisors in RRJ, unless she alleges

> (1) that the supervisor had actual or constructive knowledge that his subordinate[s were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to ... plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).  There can be no supervisory liability, however, when there is no underlying violation of the Constitution. See Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991).  "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Crisano was placed on telephone restrictions and administrative segregation for "Security Reasons" on November 26, 2018 [Dkt. No. 1-2 at 3][9] because she had tried "to hire someone to" commit a murder while she was detained at RRJ.  [Id. at 13].[10]  The Court will assume that Crisano is implying that the alleged telephone monitoring impinged upon her attorney-client confidentiality and her right to effective assistance of counsel.

When a jail regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest.  See Turner v. Safley, 482 U.S.

---

[9]  Plaintiff was convicted of three counts of solicitation to commit capital murder/murder for hire on August 9, 2019.  Commonwealth v. Crisano, Case Nos. CR291-02, -03, and-09.  See Case Status and Information, supra note 4 (last viewed Jan. 11, 2021).  The offenses occurred on October 1, 2018, which is about six weeks prior to the telephone restrictions.

[10]  In a grievance complaining about the restriction on her mail, defendant Grimes responded that plaintiff's "behavior dictates the action [he] ordered."  See Dkt. No. 13-8 at 5.

14

78, 89 (1987). A jail "does not need actually to demonstrate that its regulations" succeed in

achieving the penological goals at which they are aimed; the regulations must instead merely

have a rational relationship to the stated goals. United States v. Stotts, 925 F.2d 83, 87 (4th Cir.

1991). Several factors are relevant in determining the reasonableness of the regulation:

> (1) whether there is a "valid, rational connection" between the prison regulation
> or action and the interest asserted by the government, or whether this interest is
> "so remote as to render the policy arbitrary or irrational"; (2) whether 'alternative
> means of exercising the right . . . remain open to prison inmates" ... ; (3) what
> impact the desired accommodation would have on security staff, inmates, and the
> allocation of prison resources; and (4) whether there exist any "obvious, easy
> alternatives" to the challenged regulation or action, which may suggest that it is
> "not reasonable, but is [instead] an exaggerated response to prison concerns."

Turner, 482 U.S. at 89-92.

Here, Crisano cannot establish that there was any "pervasive and unreasonable" risk of

constitutional injury because the restrictions were not only necessary for institutional security but

were the direct consequences of Crisano's criminal conduct — she attempted to hire someone to

commit a murder while she was incarcerated at RRJ. In response, RRJ took the necessary steps

for an "important penological interest[]" to deter her "from using the telephone in furtherance of

criminal activity inside and outside the jail, and detecting, preventing, and prosecuting such

activity when it does occur." United States v. Lentz, 419 F. Supp. 2d 820, 835 (E.D. Va. 2005).

"'Running a prison is an inordinately difficult undertaking,' and the task is 'peculiarly within the

province of the legislative and executive branches of government.' As a consequence, courts

must accord deference to the officials who run a prison, overseeing and coordinating its many

aspects, including security, discipline, and general administration." Lovelace v. Lee, 472 F.3d

174, 199 (4th Cir. 2006). In evaluating the restrictions under Turner, there is a rational

connection between Crisano's conduct (attempting to hire someone to commit a murder while

incarcerated in RRJ) and the restrictions RRJ placed upon Crisano's use of and monitoring of her

use of the telephone and mail.  See Guajardo v. Estelle, 580 F.2d 748, 756-57 (5th Cir. 1978)

(prison officials may properly censor an inmate's mail in order to preserve security, order, and

rehabilitation).  To ensure plaintiff would not continue to pursue criminal conduct via the

telephone, such as soliciting someone to commit murder while incarcerated, RRJ took reasonable

steps to monitor her telephone communications by restricting her communications to detect,

prevent, and prosecute any further criminal behavior on her part.

 The amended complaint fails because it alleges no prejudice from the alleged restrictions

placed upon Crisano's access to the courts, restrictions on mail, or her attorney-client

relationship.  "[I]t is well settled that some showing of prejudice is a necessary element of a

Sixth Amendment claim based on an invasion of the attorney client relationship."  United States

v. Chavez, 902 F.2d 259, 266 (4th Cir. 1990); see also Lentz, 419 F. Supp. 2d at 835-36

(concluding jail's policy of recording all telephone conversations did not violate criminal

defendant's Sixth Amendment right to counsel; defendant had other avenues to communicate

confidentially with counsel and government is not required to provide defendant with the most

convenient means of communication).

 Contrary to Crisano's claims, Crisano had no right to telephone her attorney.  See

Aswegan v. Henry, 981 F.2d 313, 314 (8th Cir. 1992) (inmate's constitutional right of

meaningful access to the courts does require "any particular means of access, including unlimited

telephone use"); see also Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir. 1989) (prisoners

have no right to unlimited telephone use); Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir.

1994) (holding that "an inmate has no right to unlimited telephone use").  RRJ's provision of

telephone calls to Crisano was a means, not the only means, of allowing her to communicate

with her attorney.  See Valdez v. Rosenbaum, 302 F.3d 1039 (9th Cir. 2002) (holding that there

is no First Amendment right to telephone access, instead there is a First Amendment right to communicate with persons outside of prison walls, and "[u]se of a telephone provides a means of exercising this right."); Pope v. Hightower, 101 F.3d 1382 (11th Cir. 1996) (inmates First Amendment rights were not violated because he had an "alternative means" of communicating with persons outside the prison).[11] "Prison officials, exercise 'wide discretion' in determining the manner and method that inmates will be allowed to access the court system and their attorneys; prisoners are not entitled to any particular method of access to the courts or to their lawyers." Lentz, 419 F. Supp. 2d at 835 (citing Bounds v. Smith, 430 U.S. 817, 833 (1977)). Moreover, Crisano has not established any prejudice resulted from having a correctional officer present while she had telephone conversations with her counsel.

Crisano's allegations do not establish that her attorney was in any way hampered in his communication with her, or that it hindered his investigation or impacted the presentation of her defense.

> "Not all government interference with the attorney-client relationship," however, "renders counsel's assistance so ineffective as to violate a defendant's sixth amendment right to counsel." Hall v. State of Iowa, 705 F.2d 283, 290 (8th Cir.), cert. denied, 464 U.S. 934 (1983); see also United States v. Irwin, 612 F.2d 1182, 1185 (9th Cir. 1980). Rather, it is well settled that *some showing of prejudice is a necessary element of a Sixth Amendment claim based on an invasion of the attorney-client relationship.*

Chavez, 902 F.2d at 266 (emphasis added); see United States v. Jenkins, 178 F.3d 1287 [published in full-text format at 1999 U.S. App. LEXIS 8703, at *10] (4th Cir. 1999)

---

[11] Plaintiff's grievances establish RRJ staff assisted her with placing phone calls to her attorney. A January 15, 2020 grievance notes plaintiff had three attorney calls since January 6, 2020, and that RRJ was looking into plaintiff's new attorneys telephone number. A January 16, 2020 grievance states plaintiff was unable to talk with her attorney because his office was closed by the time staff got her on the phone. The grievance apologized, and stated staff are not always available at plaintiff's convenience. See Dkt. No. 13-12 at 8-9.

(unpublished) (holding not proper for a court to "presume that prejudice occurred" in the context of a Sixth Amendment violation) (citing Weatherford v. Bursey, 429 U.S. 545, 556 (1977)); see also Saunders v. Dickerson, No. 1:07cv1094, 2008 U.S. Dist. LEXIS 48727, at *9-12 (E.D. Va. 2008) (court held pretrial detainee whose telephone privileges were completely suspended while in administrative segregation and was unable to call his attorney, suffered no prejudice and failed to state a viable Sixth Amendment claim because he could have written or had in-person visits with his attorney), aff'd, 313 Fed. App'x. 665 (4th Cir. 2009). Indeed, Crisano's own exhibits establish she was provided an opportunity to review her mail and identify what she needed for her defense, and that she refused to do so. [Dkt. No. 13-9 at 3]. To be sure, despite the voluminous number of grievances Crisano filed in opposition to the motion to dismiss, the grievances establish no prejudice. To the contrary, the grievances show that on numerous occasions RRJ personnel accommodated plaintiff's requests for telephone access as well as explaining why it could not be provided on demand due to lack of staff or the timing of the request. See, e.g., Dkt. No. 13-10 at 3-4 (noting two attorney calls and procedures for requesting as well as staffing issues).

Crisano's complaints regarding the restrictions on her mail and her allegations that documents were improperly read and went missing – which were related to her upcoming criminal case – do not allege any actual injury.[12] In this same vein, Crisano does not allege

---

[12] In a habeas action plaintiff filed in this Court, Crisano v. Commonwealth of Virginia, No. 1:20cv46 (June 6, 2020) (dismissed without prejudice for failure to exhaust), plaintiff asserts and/or provides copies of numerous letters (dated from February through November of 2019) she sent and received while in RRJ, as well as several motions she filed. The total includes two letters she sent to her attorney, ten letters she sent to the circuit court/clerk, nine responses she received from the court/clerk, and six motions she filed on behalf of herself. Id., Dkt No. 1-1 through 1-22. Apart from habeas petitions, as noted, Crisano has also filed over forty lawsuits in this Court, most of which were filed during March through June 2019, the period prior to filing the original complaint. Her assertions of restricted mail, absent a specific actual injury, are

anything that was allegedly obtained by the RRJ employees was used against her at her trial.  In

Chavez, the Sixth Amendment violation alleged that investigators had improperly interviewed

the defendant.  The Fourth Circuit, however, found no Sixth Amendment violation because the

government did not use any of the

> information elicited from [the defendant] against him at trial or in sentencing, and
> the government's repeated contacts uncovered no confidential information
> regarding defense counsel strategy or witness plans.  See Weatherford, 429 U.S.
> at 554 (had any of state's evidence "originated in these conversations," defendant
> "would have a much stronger case"); United States v. Glover, 596 F.2d 857, 864
> (9th Cir.) ("had the interviewing agents obtained any evidence that could have
> been used against [the defendant], this would be a different case"), cert. denied,
> 444 U.S. 860 (1979).

Chavez, 902 F.2d at 267.  Crisano identifies nothing from any monitored telephone call, or any

of her mail, or any alleged missing document that was used against her at trial or sentencing or

that she was prevented from presenting at trial or sentencing.  In short, no specific allegation of

actual injury or prejudice.

    In claim 1, Crisano also alleges that other inmates could hear her conversations and used

information they overheard to obtain "plea deals."  [Dkt. No. 36 at 7].  Initially, prison inmates

and pretrial detainees necessarily have reduced privacy rights because of the nature of

incarceration and the myriad of institutional needs and objectives of prison facilities.  Hudson v.

Palmer, 468 U.S. 517, 524 (1984); Block v. Rutherford, 468 U.S. 576, 587, 590-91 (1984);

Wolff v. McDonnell, 418 U.S. 539, 555 (1974).  Crisano knew that her conversations were being

monitored by nearby correctional officers and would have had to realize that the same

conversations could also be overheard by anyone else, including other inmates, in the vicinity.  If

she said anything to her detriment under these circumstances in which she had no reasonable

---

belied by her filings in this Court.  Crisano also does not allege she was unable to meet and
confer confidentially with her counsel in person.

expectation of privacy, the fault is upon her and not anyone at RRJ.  See Hoffa v. United States,

385 U.S. 293, 302 (1966) ("The risk of being overheard by an eavesdropper or betrayed by an

informer or deceived as to the identity of one with whom one deals is probably inherent in the

conditions of human society." (internal quotations and citations omitted)); United States v.

Longoria, 177 F.3d 1179, 1183 (10th Cir. 1999) (concluding the defendant "had no reasonable

expectation that the person in whose presence he conducts conversations will not reveal those

conversations to others.  He assumed the risk that the informant would reveal his incriminating

statements to law enforcement."); see also United States v. Thompson, 811 F.3d 944, 949 (7th

Cir. 2016) ("[W]hen the informant discovers information from where he is lawfully entitled to

be, the use of a recording device to accurately capture the events does not vitiate the consent or

otherwise constitute an unlawful search."); United States v. Hatcher, 323 F.3d 666, 674 (8th Cir.

2003) (holding that "[t]he presence of [a] prison recording device destroyed the attorney-client

privilege ... [b]ecause the inmates and their lawyers were aware that their conversations were

being recorded [and] could not reasonably expect that their conversations would remain

private").  Crisano was not compelled to make any particular statement during her calls.  See

United States ex rel. Dove v. Thieret, 693 F. Supp. 716, 726 (C.D. Ill. 1988) (no Fifth

Amendment violation absent compulsion) (citing Hoffa, 385 U.S. at 304).

> "The attorney-client privilege evaporates upon any voluntary disclosure of
> confidential information to a third party." Carter v. Gibbs, 909 F.2d 1450, 1451
> (Fed. Cir. 1990).  "The privilege can be waived by the client or prospective client
> only if the communication is later disclosed to a third party and the client either
> did not wish to keep the materials confidential or *the client did not take adequate
> steps in the circumstances to prevent the disclosure of the privileged
> communication*." B.E. Meyers & Co., Inc. v. United States, 41 Fed. Cl. 729, 731
> (1998).

Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 488 (Fed. Cl. 2000) (emphasis added).

Crisano knew she was talking on a telephone in the presence of others and that what she said

could be overheard, if any confidential matter or other matter was disclosed to her detriment the fault is hers.  Crisano has not stated a claim upon which relief could be granted and claims 1, 5, and 6 will be dismissed.

*B. Claims 2 and 8*

Claims 2 and 8 allege various RRJ officials denied Crisano access to the court.  In claim 2, Crisano alleges that from May 1, 2019 through June 1, 2019, she was denied criminal complaint forms and refused access to the United States District Court and the Stafford Circuit Court by defendants Grimes and Norris.  [Dkt. No. 36 at 7].  In claim 8, Crisano alleges that Sgt. Stoy, Cpl. Jacobs and Sgt. Adcock removed Crisano from her cell on October 15, 2018, March 21, 2019, and May 9, 2019, just prior to her trial dates, and when Crisano returned to her cell her "legal documents [that] were needed and necessary for effective legal arguments were missing or destroyed."  [Id. at 10].

Denial of access to courts claims can be either forward-looking or backward-looking. Christopher v. Harbury, 536 U.S. 403, 415 (2002).  In forward-looking claims, the plaintiff accuses the government of creating or maintaining some "frustrating condition," that stands between the plaintiff and "the courthouse door."  Id. at 413.  The object of the suit is to eliminate the condition, thereby allowing the plaintiff to sue on some underlying legal claim.  See Christopher, 536 U.S. at 413 (collecting cases).  In backward-looking claims, the plaintiff claims government officials have denied him access and

> may allegedly have caused the loss or inadequate settlement of a meritorious case, e.g., Foster v. Lake Jackson, 28 F.3d 425, 429 (CA5 1994); Bell v. Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984) ("The cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress"), the loss of an opportunity to sue, e.g., Swekel v. River Rouge, 119 F.3d 1259, 1261 (6th Cir. 1997) (police cover-up extended throughout "time to file suit ... under ... statute of limitations"), or the loss of an opportunity to seek some particular order of relief, as Harbury alleges here.  These cases do not look

> forward to a class of future litigation, but backward to a time when specific
> litigation ended poorly, or could not have commenced, or could have produced a
> remedy subsequently unobtainable.

Christopher, 536 U.S. at 414 (footnote omitted).  In either case, "[i]t follows that the underlying

cause of action, whether anticipated or lost, *is an element that must be described in the*

*complaint*, just as much as allegations must describe the official acts frustrating the litigation."

Id. at 413 (emphasis added).  To state a claim for violation of her right of access to the courts, an

inmate must demonstrate that her position as a litigant was actually prejudiced.  See Lewis v.

Casey, 518 U.S. 343, 356 (1996).  Crisano must "demonstrate that the alleged shortcomings ...

hindered [her] efforts to pursue a legal claim." Id. at 351.  Crisano, however, has not provided

the details of any forward- or backward-looking cause of action as a proper predicate to support

her claim that she has been denied access to the courts, or that she was hindered or "actually

injured" in any specific case.  O'Dell v. Netherland, 112 F.3d 773, 776 (4th Cir. 1997).

 Crisano alleges no actual prejudice and she has not set forth the underlying claim in any

action she has filed or been prevented from filing as required by Christopher.  Crisano has filed

over forty civil rights complaints in this Court alone since March of 2019.  See, supra at note 6.

Along with her numerous filings in this Court, Crisano has 35 docket entries in the Fourth

Circuit,[13] and she has also filed two civil matters in the United States District Court for the

District of Maryland in 2019.[14]  It is of no surprise that Crisano has also filed civil actions in

state court as well.  Since July 2019, Crisano has filed twelve civil complaints in the Circuit

---

[13] In Crisano v. Hopkins, 776 Fed. Appx. 163, 2019 U.S. App. LEXIS 25790 (4th Cir. Aug. 27, 2019) (the Fourth Circuit order affirming dismissal without prejudice pursuant to § 1915(g) references nine related appeals by plaintiff from § 1915(g) dismissals by this Court in which she voluntarily dismissed the appeals).

[14] See Pacer Case Locator, https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf (search Crisano, Cassie, last viewed Jan. 11, 2021).

Court for Stafford County, Virginia.[15]  Crisano has filed one civil appeal in the Court of Appeals of Virginia, Crisano v. Superintendent of Rappahannock Regional Jail, Record No. 0914-20-2 (dismissed Sept. 15, 2020),[16] and several matters in the Supreme Court of Virginia as well.[17] Despite her prolific litigation over the last two years, she points to no case in which she has been prejudiced by any defendant.

Crisano also alleges within her access to the courts claim that denying her DC-311 criminal complaint forms denied her access to the courts.[18]  Crisano, however, does not have "a constitutional right to have someone criminally prosecuted." Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990).  Moreover, the constitutional right of access to the courts does not encompass providing inmates with blank criminal complaint forms.  The "[a]uthority to initiate a criminal complaint rests exclusively with state and federal prosecutors; whether to bring such a complaint is generally within the discretion of the prosecutor." Sahagian v. Dickey, 646 F. Supp. 1502,

---

[15]  Crisano v. Linton, Case No. CL19002101-00 (active); Crisano v. Byles, Case No. CL19002140-00 (active); Crisano v. Greer, Case No. CL19002141-00 (active); Crisano v. Stafford County Sheriff, Case No.  CL19002042-00 (active); Crisano v. Rappahannock Regional Jail, Case No. CL19002219-00 (active); Crisano v. Hopkins, Case No. CL19002588-00 (active); Crisano v. Reyes, Case No. CL19002589-00 (active); Crisano v. Hudson, Case No. CL20002748-00 (active); Crisano v. Irdis, Case No. CL19003062-00 (active); Crisano v. Bradford, Case No. CL20002749-00 (active); Crisano v. Commonwealth, Case No. CL20003052-00 (denied Sept. 17, 2020); Crisano v. Superintendent Hudson, Case No. CL20003334-00 (habeas, active). See Case Status and Information, supra note 4 (last viewed Jan. 11, 2021).

[16] See Case Status and Information, supra note 4 (last viewed Jan. 11, 2021).

[17]  Crisano v. Hudson, Superintendent, Record No. 201244 (mandamus, active); In re Crisano, Record No. 201188 (mandamus, active); and Crisano v. Hudson, Superintendent, Record No 201261 (habeas, active). See Case Status and Information, supra note 4 (last viewed Jan. 11, 2021).

[18]  In addition, her allegations are contradicted by her own exhibits, which establish that she was not denied DC-311 forms.  RRJ had provided Crisano with DC-311 forms but she wanted "four more forms."  The response was not at this time but that Crisano could write the Alexandria courts because that was where she was sending the forms. See [Dkt. No. 13-10 at 6].

1506 (W.D. Wis. 1986). Such complaints must be initiated by the appropriate prosecutorial office: a state court prosecutor, a United States Attorney, or a federal grand jury. Kennedy v. Anderson, 373 F. Supp. 1345, 1346 (E.D. Okla. 1974).

In an analogous situation, a federal district court held that an inmate was not denied access to the courts because the court clerk would not file a criminal complaint against prison staff and noted that "[a] private citizen 'lacks a judicially cognizable interest in the prosecution or non-prosecution of another.'" Lister v. Pickaway County Sheriff's Office, Civil Action 2:14-cv-269, 2014 U.S. Dist. LEXIS 45340, *10 (S.D. Ohio, Apr. 2, 2014) (citing Linda R. v. Richard V., 410 U.S. 614, 619 (1973); Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) ("In our system ... the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.")). If a clerk does not deny a citizen access to the courts by not filing a criminal complaint, a correctional officer does not deny a prisoner or detainee access to the courts by denying them a criminal complaint form.

> Inmates have a guaranteed right to reasonable access to both state and federal courts. Ex parte Hull, 312 U.S. 546 (1941); Procunier v. Martinez, 416 U.S. 396, (1974). However, that right involves only an entitlement to seek to "enforce personal rights in civil litigation." Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990). "No citizen has an enforceable right to institute a criminal prosecution." Lopez, 914 F.2d at 494 (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973)).

Breckenridge v. Thompson, Civil Action No. 7:08-cv-00243, 2008 U.S. Dist. LEXIS 26734, *3, (W.D. Va. Apr. 1, 2008).

In claim 8, Crisano alleges that on three occasions "legal documents" that she "needed and [that were] necessary for effective legal arguments were missing or destroyed." [Dkt. No. 36 at 10]. Crisano, however, fails to identify the underlying litigation or establish that she suffered any actual injury. Claim 8 is simply conclusory. See Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not

sufficient).  Claims 2 and 8 do not state a claim upon which relief can be granted and will be dismissed.

*C.  Claim 3*

Crisano's third claim alleges that defendants First Sgt. Branson, Cpl. Jacobs; Cpl. Moore; and Sgt. Adcock searched her cell on July 10, 2019 and that during the search the officers spilled "water and fiber powder" on her legal documents that the officers had "thrown on the floor." [Dkt. No. 36 at 8].  Crisano, however, has no reasonable expectation of privacy in the contents of her cell.  Accordingly, any search of her cell is not a "search" within the meaning of the Fourth Amendment.[19]  Hudson, 468 U.S. at 525-26 (1984) ("[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."); see also Jones v. Murray, 962 F.2d 302, 306 (4th Cir. 1992).  Crisano therefore had no Fourth Amendment protection in the contents of her cell, and the defendants were legally able to search her cell for any reason.  See Hudson, 468 U.S. at 529 (holding that even random searches of prison cells are permissible under the Fourth Amendment).  Thus, Crisano cannot provide any set of facts by which the defendants would be liable to her for their actions.  She has failed to state a claim against the defendants.

_____

[19]  Even though Crisano appears to have been a pretrial detainee on the date alleged, pretrial detainees, like convicted prisoners, lack Fourth Amendment protection from searches of their cells.  See Bell, 441 U.S. at 556-57.  In Block, the Supreme Court directly addressed this issue and held that the search of a pretrial detainee's cell by prison officials did not violate the Fourth Amendment or offend principles of due process.  468 U.S. at 590-91; see also id. at 587 (noting "[the]re is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates....[and] it may be that in certain circumstances [detainees] present a greater risk to jail security and order.") (quoting Bell, 441 U.S. at 546, n. 28).  Moreover, Block held that pretrial detainees have no constitutional right to be present during the searches of their cells, and that prison policies requiring that detainees be absent during cell searches did not run afoul of any constitutional protections.  Id. at 591, n.12.

In addition, as noted in other claims, to the extent Crisano is alleging a denial of access to the courts, she must show some actual injury resulting from a denial of access in order to allege a constitutional violation, Lewis, 518 U.S. at 349, which requires she demonstrate a non-frivolous legal claim that was frustrated or impeded by some actual deprivation of access.  Id. at 352-53; see also supra at 21-22.  Crisano, however, does not allege an actual injury resulting from the search or the alleged damaged or confiscated document.  Although she has filed numerous cases, she has pointed to no missed deadline or loss of a meritorious claim resulting from the search or alleged damaged or confiscated legal materials.  Claim 3 will be dismissed.

*D. Claim 4*

In claim 4, Crisano alleges that on November 18, 2018 through October 8, 2020, Crisano filed grievances that were improperly processed by Counselor Stevenson.  The grievances were rejected for technical reasons (request forms not attached, the matter was not grievable, and she had provided insufficient facts); her grievances were not investigated; and Crisano "suffered retaliation through delays trying to contact her attorney."  [Id.].

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated their constitutional rights.  See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013).  Crisano, however, has "no constitutional entitlement or due process interest in access to a grievance procedure.  An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process."  Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (inmates have "no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Mitchell v. Murray, 856 F. Supp. 289, 294 (E.D. Va. 1994) ("There simply is no fundamental right to a grievance system nor is there a fundamental right requiring prison administrators

investigate prisoner complaints."); see also Scott, 107 F. Supp. 2d at 710 ("It is well established

that inmates do not have a constitutionally protected right to participate in a prison grievance

procedure.") (citation omitted).  Consequently, a jail official's failure to comply with the jail's

grievance procedure does not violate any constitutionally protected right.  Mann v. Adams, 855

F.2d 639, 640 (9th Cir. 1988); see Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)

(holding that not every violation of state-created procedures amounts to a federal due process

violation and noting that a state's failure to abide by its own law as to procedural protections is

not a federal due process issue).  While Crisano has no constitutional right to a grievance

procedure or claim if a defendant violated some procedure, if she "believes that defendants'

failure to respond to grievances has resulted in injury to [her] constitutionally protected interests,

plaintiff may file a claim under 42 U.S.C. § 1983 to redress that particular injury."  Scott, 107 F.

Supp. 2d at 710.

Claims of retaliation by inmates are generally treated with skepticism because "[e]very

act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to

prisoner misconduct."  Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).  To state a claim

for retaliation a plaintiff must meet a number of pleading requirements.  First, an inmate must

show that the allegedly "retaliatory act violated some constitutional right of an inmate or

constituted punishment for the exercise of a constitutional right."  Id. at 1318.  Importantly, the

inmate must allege facts demonstrating that his or her exercise of some constitutional right was a

"substantial" or "motivating factor" for the retaliatory act.  See Wagner v. Wheeler, 13 F.3d 86,

90-91 (4th Cir. 1993).  Second, the inmate must show a sufficiently adverse impact on a

constitutional right as a result of retaliation.  ACLU of Md. Inc. v. Wicomico Cty., 999 F.2d 780,

785 (4th Cir. 1993).  If a plaintiff has not alleged impairment of his or her constitutional rights,

"there is no need for the protection provided by a cause of action for retaliation;" therefore, a showing of adversity is essential to any retaliation claim. Id. Finally, plaintiff must demonstrate that prison officials' actions "did not advance legitimate penological objectives." Talbert v. Hinkle, 961 F. Supp. 904, 911 (E.D. Va. 1997).

Claim 4 attempts to raise either her access to the courts or interreference with counsel claims, or both, as the "particular injury" upon which she seeks relief within the context of her allegation of retaliation. Crisano's argument fails, however, because she has not established either a denial of access to the courts or a viable Sixth Amendment claim. See, supra at 12-25. Further, she has failed to show the requisite adversity necessary to support a claim of retaliation. The district court's opinion in Pearson v. Simms, 345 F. Supp. 2d 515 (D. MD 2003), aff'd, 88 F. App'x 639 (4th Cir. 2004), is persuasive on this point because of the nearly identical nature of the claim and alleged retaliation.

Pearson involved a week-long delay in the posting of an inmate's legal mail, but the inmate did not allege an "actual injury or specific harm, sufficient to support a claim of denial of access to the court, which he has suffered as a result of the allegedly alleged delay or mishandling of his mail." Id. at 520. Pearson noted that the only evidence that the inmate offered of an injury was his "conclusory statement that he was unable to properly prosecute his cases." Id. The inmate also claimed that the "defendants harassed … and retaliated against him due to his filing administrative grievances." Id. Pearson, however, found the allegation of retaliation without merit because a "showing of adversity is essential to any retaliation claim" and the inmate had "failed to show how the alleged retaliatory conduct adversely impacted his access to the courts." Id. (quoting ACLU, 999 F.2d at 785); Id. ("Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for

retaliation."). Given the multitude of civil actions Crisano has filed, and her failure to provide any specific or actual injury with regard to her access to the courts claims or interreference with her right to counsel, Crisano cannot satisfy the adversity predicate for a claim of retaliation.

*E. Claim 7*

In claim 7, Crisano alleges she was denied access to the law library on several dates in November and December 2019 by Cpl. Jacobs, and on the several different dates in November and December 2019 by Sgt Story in retaliation for her filing complaints against them. [Id. at 9]. Her claim of retaliation in this instance suffers the same inadequacy as the retaliation allegation in claim 4 — she has identified no actual injury. To state a claim for violation of her right of access to the courts, an inmate must demonstrate that her position as a litigant was actually prejudiced, Lewis, 518 U.S. at 356, and she must "demonstrate that the alleged shortcomings ... hindered [her] efforts to pursue a legal claim." Id. at 351. As noted previously, Crisano has not provided the details of any forward- or backward-looking cause of action as a proper predicate to support her claim that she has been denied access to the courts, or that she was hindered or "actually injured" in any specific case. See, supra at 21-23. Without a showing of adversity, this claim fails to state a claim upon which relief can be granted.

*F. Claim 18*

Claim 18 alleges Crisano "has been subjected to violations of her 6th, 5th, and 14th Amendment rights and her right to due process. [Crisano]'s 8th Amendment right to be free from cruel and unusual punishment by the defendants out of retaliation to [Crisano] for exercising her 8th Amendment right." [Dkt. No. 36 at 13]. However, Crisano cannot rely on conclusory allegations; she must identify with specificity an actual injury resulting from official conduct. Cochran, 73 F.3d at 1317. "Threadbare recitals of the elements of a cause of action,

29

supported by mere conclusory statements, do not suffice [to state a plausible claim to relief]....
While legal conclusions can provide the framework of a complaint, they must be supported by
factual allegations." Iqbal, 556 U.S. at 678-79. In addition, Crisano does not connect any
defendant to any of her conclusory allegations. "Broad, conclusory allegations, unsupported by
specific facts implicating specific defendants are insufficient to state a claim upon which relief
can be granted." Martin v. Del. Law Sch. of Widener Univ., 625 F. Supp. 1288, 1297 (D. Del.
1985).

To the extent Crisano is referencing any of the claims raised and addressed herein, the
claim is not only conclusory, but the claims have already been addressed and found to be without
merit. To the extent she seeks to incorporate any of the new claims (claims 9-13 and 15-17), the
claim will be dismissed without prejudice.

### IV. Conclusion

For the reasons outlined above, claims 1-8 will be dismissed with prejudice, the
remaining claims will be dismissed without prejudice (claims 9-17), claim 18 will be dismissed
with prejudice to the extent it seeks to raise claims 1-8, and defendant's motions to dismiss [Dkt.
No. 37] will be granted through an Order that will issue alongside this Memorandum Opinion.

Entered this 12ᵗʰ day of _____ Jan _____ 2021.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia

30